# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BOARD OF TRUSTEES OF THE )
AUTOMOBILE MECHANICS' LOCAL )
NO. 701 UNION AND INDUSTRY )
PENSION FUND, )
　)
　　　　Plaintiff, )
　) Case No. 12 CV 7047
　　v. )
　) Judge Joan B. Gottschall
JOYCE FORD, INC., an Illinois )
corporation; COUNTY MAYO )
CORPORATION, an Illinois corporation; )
NEPHIN INVESTMENTS, L.P., an Illinois )
limited partnership; JOBRIT, LLC, an )
Illinois limited liability company; and 2401 )
SO. MICHIGAN BUILDING )
CORPORATION, an Illinois corporation, )
　)
　　　　Defendants. )

## MEMORANDUM OPINION & ORDER

Plaintiff Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund filed this action under the Employee Retirement Income Security Act (ERISA), as amended by the Multiemployer Pension Plan Amendment Acts of 1980 (MPPAA). The Fund seeks to collect withdrawal liability incurred as a result of the withdrawal from the Fund by defendant Joyce Ford, Inc. The Fund alleges that defendants County Mayo Corporation; Nephin Investments, L.P.; Jobrit, LLC; and 2401 So. Michigan Building (2401) (collectively, the Additional Defendants) are jointly and severally liable for Joyce Ford's alleged withdrawal liability because they are trades or businesses in common control with Joyce Ford. *See* 29 U.S.C. § 1301(b)(1).

The Additional Defendants moved to dismiss the suit for failure to state a claim upon which relief could be granted. They argued that the Fund's allegations were insufficient to show common control between Joyce Ford and the Additional Defendants. The court denied the motion, holding that the amended complaint's allegations are sufficient to state a claim of common-control withdrawal liability against the Additional Defendants.

Now before the court is the Fund's motion for summary judgment against Joyce Ford and 2401. For the reasons discussed below, the motion is granted.

## I. BACKGROUND FACTS

In conjunction with its motion for summary judgment, the Fund filed a statement of facts as required by Northern District of Illinois Local Rule 56.1(a)(3). Joyce Ford and 2401 filed a separate statement of facts along with their response to the motion for summary judgment, but did not directly address the Fund's statement of facts. (*See* Defs.' Stmt. of Uncontested Facts, ECF No. 55.)

This court's local rules require parties opposing summary judgment to file "a concise response to the movant's statement [of material facts]. . . . All materials set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3). Because the defendants have not disputed the facts in the Fund's statement, "the court deems those facts admitted, and the facts that follow are taken primarily from the plaintiff['s] statement." *Bd. of Trustees of the Auto. Mechs.' Local No. 701 Union & Indus. Welfare Fund v. Beland & Wiegers Enters.*, No. 13 CV 1611, 2014 WL 4175780, at *1 (N.D. Ill. Aug. 21, 2014). "Nevertheless, the court must still construe those facts in the light most favorable to the defendants as well as draw all reasonable inferences in their favor." *Id.* (internal quotation marks omitted).

Joyce Ford entered into a new collective-bargaining agreement (CBA) with the Automobile Mechanics' Local Union No. 701 in May 2010. Joyce Ford executed a participation agreement in which it agreed to be bound by the provisions of the Agreement and Declaration of Trust (Trust Agreement) which created the Fund. Pursuant to the provisions of the CBA and the Trust Agreement, Joyce was required to make monthly reports of the number of weeks worked by covered employees and pay contributions to the Fund for each week that a covered employee performs any work at the negotiated rate set forth in the CBA. In April 2012, Joyce ceased its operations and stopped making contributions to the Fund.

On June 5, 2012, the Fund's counsel sent Joyce Ford a notice and demand for payment of withdrawal liability of $281,184. The notice and demand for payment contained a payment schedule in accordance with 29 U.S.C. § 1399. Under the schedule, Joyce Ford was to make 41 quarterly payments of $9,282 each, followed by a final payment of $5,600.05 to pay off its withdrawal liability. The first quarterly payment was due on July 1, 2012.

After Joyce Ford failed to make its first quarterly payment on July 1, 2012, the Fund sent Joyce Ford a notice to cure its default in accordance with 29 U.S.C. § 1399(c)(5)(a). The notice informed Joyce Ford that it would need to cure its default or the Fund would accelerate all of the outstanding withdrawal liability. None of the defendants submitted any payment toward the outstanding withdrawal liability, nor did they request a review of the original withdrawal-liability calculation or the revised withdrawal-liability calculation in accordance with the MPPAA.

The amended complaint alleges that in December 2012, the Fund's actuary determined that the withdrawal liability had increased to $351,854. Pursuant to the Pension Benefit Guaranty Corporation's website, the interest rate for overdue or defaulted withdrawal liability

3

has been 3.25% since January 1, 2012. Interest on the unpaid withdrawal liability in the amount of $351,854 from July 1, 2012 to December 1, 2013 at a rate of 3.25% equals $17,594.31. The Trust Agreement provides that withdrawal-liability payments "not received before the expiration of said period shall be assessed liquidated damages of at least ten percent (10%) of the monies due per month." (Agm't & Decl. of Trust 9-10, ECF No. 42-6.) Liquidated damages at 10% of $351,854 would be $35,185.40.

The Pension Fund Trust Agreement also states: "Employers shall be liable to the Trustees for all costs, expenses and attorney's fees . . . incurred by them in enforcing any obligation of Employers created by this Trust Agreement or any bargaining agreement, including, without limitation, the duty to furnish records to the Trustees to determine the Employer's compliance with said obligations." (*Id.* at 12-13.) As of November 26, 2013, the Plaintiffs have expended $14,481.66 in attorney's fees and costs.

Maureen Joyce owns 85% of the only class of outstanding shares in Joyce Ford. At the time of Joyce Ford's withdrawal from the Fund in April 2012, Maureen Joyce owned 100% of the outstanding voting shares of 2401.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

4

## III. ANALYSIS

The Fund asks the court to grant its motion for summary judgment and award damages as follows: $351,854 in unpaid withdrawal liability; $35,185.40 in liquidated damages for failure to pay the withdrawal-liability assessment; $17,594.31 in interest at a 3.25% rate; and $14,481.66 in attorney's fees and costs.

### A. Joyce Ford's Liability

The defendants do not dispute that Joyce Ford terminated its operations and stopped making contributions to the Fund on behalf of its employees in April 2012. The defendants also do not dispute that this constitutes a complete withdrawal from the Fund. *See* 29 U.S.C. § 1383(a) ("[A] complete withdrawal from a multiemployer plan occurs when an employer-- (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."). The amended complaint alleges that Joyce Ford incurred $351,854 in withdrawal liability. The defendants do not dispute this figure.

Before a plan sponsor may assess withdrawal liability based on an employer's complete withdrawal, the plan sponsor must (1) notify the employer of the amount of the liability; (2) notify the employer of the schedule for liability payments; and (3) demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). The undisputed facts demonstrate that the Pension Fund complied with these steps. On June 5, 2012, the Fund sent a notice and demand for payment of withdrawal liability to Joyce Ford and enclosed a payment schedule, with the first payment due on July 1, 2012. Joyce Ford did not make a payment on July 1, 2012.

"In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made . . . if the

failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure . . . ." 29 U.S.C. § 1399(c)(5). On July 2, 2012, after Joyce Ford failed to make its first quarterly payment, the Fund sent Joyce Ford a notice of default as required by 29 U.S.C. § 1399(c)(5). The Fund filed its first amended complaint on February 6, 2013, more than sixty days after it sent Joyce Ford the notice of default.

Under 29 U.S.C. § 1399(b)(2)(A)(i), withdrawing employees may request a review of "any specific matter relating to the determination of the employer's liability and the schedule of payments" within 90 days of receiving its notice of withdrawal liability pursuant to 29 U.S.C. § 1399(b)(1). If the employer disputes the withdrawal-liability assessment after it requests a review, it must initiate arbitration to dispute the assessment. *See* 29 U.S.C. § 1401(a)(1). Joyce Ford did not request a review of the Fund's withdrawal-liability assessment, nor did it initiate arbitration to dispute the assessment.

"If no arbitration proceeding has been initiated pursuant to [29 U.S.C. § 1401(a)(1)], the amounts demanded by the plan sponsor under [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1); *see Cent. States, Se. & Sw. Areas Pension Fund v. Allega Concrete Corp.*, No. 13 C 6896, -- F. Supp. 2d --, 2014 WL 99075, at *1 (N.D. Ill. Jan. 9, 2014).

Joyce Ford did not initiate an arbitration proceeding to dispute the Fund's withdrawal-liability assessment. Therefore, as a matter of law, B&W is liable for the withdrawal-liability assessment of $351,854. Additionally, the Pension Fund is entitled to 3.25% interest as a matter of law pursuant to 29 U.S.C. § 1399(c)(3) and 29 C.F.R. § 4219.32. That interest amount totals

$17,594.31. The Fund is also entitled to liquidated damages of 10% pursuant to 29 U.S.C. § 1451(c) and the Trust Agreement. Ten percent of $351,854 is $35,185.40.

The Fund is also entitled to reasonable attorney's fees and costs as a matter of law pursuant to the Trust Agreement. The undisputed facts show that the plaintiffs have expended $14,481.66 in attorney's fees and costs, and the court finds this amount to be reasonable.

**B.    2401's Liability**

The court must determine "whether withdrawal liability may properly be imputed to [2401] under § 1301(b)(1)." *Cent. States*, *Se. & Sw. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir. 1992). Under 29 U.S.C. § 1301(b)(1), "all employees of trades or business which are under common control shall be treated as employed by a single employer and all such trades and business as a single employer" for purposes of withdrawal liability. Thus, for the court to hold 2401 jointly and severally liable for Joyce Ford's withdrawal liability, the Fund must establish that: (1) 2401 and Joyce Ford are each a "trade or business," and (2) 2401 and Joyce Ford are under common control. *See Personnel*, 974 F.2d at 792.

The parties dispute whether 2401's lease of property to Joyce Ford constitutes a trade or business. 2401 argues that it intended to hold and preserve the properties for passive investment purposes. It argues that under *Groetzinger v. Commissioner*, 771 F.2d 269 (7th Cir. 1985), *aff'd*, 480 U.S. 23 (1987), a passive personal investment is insufficient to rise to the level of a "trade or business" for purposes of § 1301(b)(1). The Fund disagrees, arguing that the act of leasing property to a withdrawing employer is categorically a trade or business. *See Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 879 (7th Cir. 2011).

The court need not determine whether the leasing of property constitutes a trade or business. As the Seventh Circuit explained: "Statutory terms or words will be constructed

7

according to their ordinary, common meaning unless they are defined by the statute or the statutory context requires a different definition. Section 1301(b)(1) presents no interpretive difficulties when it is used to impute withdrawal liability to another corporation or other formally recognized business organization that is under common control with the obligated entity." *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). If the court determines that 2401 is a corporation, that is sufficient to satisfy the § 1301(b)(1) "trade or business" test. *Groetzinger*, which dealt with the more "thorny questions [that] arise when informal economic activities are claimed to be a trade or business," is not relevant. *Id.* (construing *Groetzinger*, 480 U.S. at 35).

The amended complaint alleges that 2401 is an Illinois corporation, and 2401 "admits that it is an Illinois corporation . . . ." (Add'l Defs.' Answer ¶ 11, ECF No. 41.) "As a corporation, [2401] is clearly a 'trade or business' for purposes of § 1301(b)(1)." *Bd. of Trustees*, 2014 WL 4175780, at *5 (citing *Fulkerson* at 895). Likewise, "Joyce admits that it is an Illinois corporation . . . ." (Joyce's Answer ¶ 7, ECF No. 3.) Thus, the undisputed facts show that both 2401 and Joyce Ford are trades or businesses as a matter of law for purposes of § 1301(b)(1).

Next, the court must determine whether 2401 and Joyce Ford are under common control. Section 1301(b)(1) "draws its definition of 'common control' from the regulations promulgated under § 414(c) of the Internal Revenue Code. . . . The only potentially applicable formation in this case is the parent-subsidiary group exists when a common parent owns a 'controlling interest' in the relevant subsidiary organizations. A 'controlling interest' is defined for these purposes as at least 80% ownership." *SCOFBP*, 668 F.3d at 880-81. Here, it is undisputed that Maureen Joyce owns 85% of the only class of shares for Joyce Ford and owned 100% of the

outstanding voting shares of 2401. Thus, 2401 and Joyce Ford are under "common control" for purposes of § 1301(b)(1).

2401 and Joyce Ford are each a "trade or business" under common control. Therefore, the court concludes that there are no questions of material fact precluding the Fund from imputing Joyce Ford's withdrawal liability to 2401 as a matter of law.

### IV. CONCLUSION

For the reasons stated above, the court grants the Fund's motion for summary judgment. The Fund is entitled to judgment against Joyce Ford, Inc. and 2401 So. Michigan Building Corporation jointly and severally as follows: $351,854 in unpaid withdrawal liability; $35,185.40 in liquidated damages; $17,594.31 in interest; and $14,481.66 in attorney's fees and costs. The court will defer entry of judgment against Joyce Ford and 2401 until the Fund informs the court how it wishes to proceed against defendants County Mayo Corporation; Nephin Investments, L.P.; and Jobrit, LLC. A status hearing is set for September 12, 2014, at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 4, 2014